IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK ELLIOTT,<br><br>    Plaintiff,<br><br>  v.<br><br>ADKNOWLEDGE, INC.,<br><br>    Defendant.<br>_____/ | No. C 10-01495 JSW<br><br>**ORDER RE CROSS-MOTIONS FOR SUMMARY JUDGMENT** |

Now before the Court are the parties' cross-motions for summary and Plaintiff Mark Elliott's motion to supplement the evidence submitted in opposition to Defendant Adknowledge, Inc.'s motion for summary judgment. Having carefully reviewed the parties' papers and the relevant legal authority, the Court DENIES Plaintiff's and Defendant's cross-motions for summary judgment, with the exception that it GRANTS Adknowledge's motion with regard to the sixth cause of action for discharge because of age in violation of FEHA. and GRANTS Plaintiff's motion to supplement the evidence.

**BACKGROUND**

Plaintiff Mark Elliott ("Plaintiff") was an Account Executive for defendant Adknowledge, Inc. ("Defendant" or "Adknowledge") in their San Francisco office from May 22, 2006 through December 12, 2008. (Complaint ("Compl.") at ¶¶ 1, 2, 6.) As an Account Executive, it was Plaintiff's responsibility to sell Defendant's services, known as cost-per-click Internet advertising, which uses predictive technology to connect advertisers with consumers across multiple channels, such as e-mail, search functions and social networks. (*Id.* at ¶ 6.) In

1 its May 15, 2006 offer letter, Defendant offered to hire Plaintiff as an at-will employee with an
2 annual salary of $65,000 and to make him eligible for a regular commissions plan set by his
3 manager and subject to change at the discretion of Adknowledge. (*Id*. at ¶¶ 7-8; *see also*
4 Declaration of Leila Narvid ("Narvid Decl."), Ex. E.)

5 As an Account Executive, it was Plaintiff's responsibility to market and sell
6 Adknowledge's services to a new account, or to a new client of a search engine marketing
7 agency account. (Compl. at ¶ 10.) Once a sale was completed, the remaining maintenance
8 work on the account was transferred to Account Managers. (*Id.*)

9 For the first two months of his employment with Adknowledge, Plaintiff was paid
10 $2,000 bonus each month. (*Id.* at ¶ 13.) After successful completion of the initial two months,
11 as stated in his offer letter, Plaintiff became eligible to earn commissions based on his sales.
12 (*Id.* at ¶ 14.)

13 Plaintiff alleges that beginning in June 2007, Adknowledge verbally agreed to pay him
14 commissions in the amount of 2.5% of all revenue from accounts which Plaintiff had sold in the
15 past or which had been assigned to him, and for any additional accounts that he would sell in
16 the future. (*Id.* at ¶ 16.) Plaintiff further alleges that Adknowledge actually paid 2.5% of all
17 revenue from all his accounts beginning in about June 2007 and continuing through March
18 2008. (*Id.* at ¶ 17.)

19 In the first week of March 2008, Adknowledge presented a written agreement which
20 would eliminate the 2.5% commissions plan effective April 1, 2008. (*Id.* at ¶¶ 18-19; *see also*
21 Declaration of Mark Elliott in Opposition ("Elliott Opp. Decl."), Ex. 1.) Although Plaintiff
22 objected to the new commission structure and refused to sign the agreement, he continued to
23 work for the company and received commissions pursuant to the new commission plan.
24 (Compl. at ¶¶ 20-24.) Beginning in May 2008 and continuing until his termination from
25 employment, Plaintiff alleges that he did not receive the 2.5% commissions on the revenue
26 generated by accounts Plaintiff had sold and on which he had completed all of his work prior to
27 April 1, 2008. (*Id.* at ¶ 22.) Plaintiff was vocal in expressing his discontent with the changed
28

2

commissions structure and felt that his multiple requests for help to meet increasing sales quotas were ignored. (*Id*. at ¶¶ 20, 24, 26-29; Elliott Decl. at ¶¶ 25-35.)

In August of 2008, Plaintiff was given certain sales expectations to meet by his supervisor and in September of 2008, Adknowledge put Plaintiff on a written sales performance plan. (Elliott Decl. at ¶¶ 31, 37, Exs. 3, 8.) On December 12, 2008, defendant Adknowledge terminated Plaintiff's employment for failure to meet the company's sales expectations. (Compl. at ¶ 36; Elliott Decl. at ¶ 41.) Plaintiff also alleges that, at the time of his termination, he was one of the two oldest Account Executives at Adknowledge, based on his appearance. (Compl. at ¶ 26; Elliott Decl. at ¶ 42.)

On March 8, 2010, Plaintiff filed a complaint against Adknowledge for: (1) breach of oral and written contract to pay commissions; (2) breach of the covenant of good faith and fair dealing; (3) violation of California Labor Code §§ 201 *et seq.*; (4) promissory fraud; (5) discharge and retaliation for opposing failure to pay wages earned; and (6) discharge because of age in violation of the California Fair Employment and Housing Act ("FEHA").

The Court shall address additional facts as necessary in the remainder of this Order.

## ANALYSIS

**1. Legal Standard on Motion for Summary Judgment.**

A motion for summary judgment is guided by a different standard. Summary judgment is appropriate when the record demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). "[A]t the summary judgment stage the judge's function is not ... to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. A fact is "material" if it may affect the outcome of the case. *Id.* at 248. The party moving for summary judgment bears the initial responsibility of identifying those portions of the record which demonstrate the absence of a genuine issue of a material fact. *Celotex Corp. v. Catrett*,

United States District Court
For the Northern District of California

1 477 U.S. 317, 323 (1986). In the absence of such facts, "the moving party is entitled to a
2 judgment as a matter of law." *Celotex,* 477 U.S. at 323.

3 Once the moving party meets this initial burden, the non-moving party "may not rest
4 upon the mere allegations or denials of the adverse party's pleading, but the adverse party's
5 response, by affidavits or as otherwise provided in this rule, must set forth specific facts
6 showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). If the non-moving party
7 fails to make this showing, the moving party is entitled to judgment as a matter of law. *Celotex*,
8 477 U.S. at 323.

**2. Breach of Contract Claims.**

The parties cross move for summary judgment on Plaintiff's first cause of action for breach of contract, second cause of action for breach of the covenant of good faith and fair dealing, and third cause of action for violation of the California Labor Code for failure to pay commissions. All three causes of action are premised upon the contracts between Plaintiff and his former employer regarding the structure of Plaintiff's commissions.

The original contract establishing the parties' employment relationship is the offer letter dated May 16, 2006 which indicates that Plaintiff will be hired as an at-will employee of Adknowledge and that the company's commissions plans were subject to change at the discretion of the company. (*See* Narvid Decl., Ex. E.)

Plaintiff alleges that beginning in June 2007, Adknowledge verbally agreed to pay him commissions in the amount of 2.5% of all revenue from accounts which Plaintiff had sold in the past or which had been assigned to him, and for any additional accounts that he would sell in the future. (Compl. at ¶ 16.) Without producing any evidence of payments, Plaintiff further alleges that Adknowledge actually paid 2.5% of all revenue from all his accounts beginning in about June 2007 and continuing through March 2008. (*Id.* at ¶ 17.) Plaintiff's supervising Sales Manager for the West Coast, Jason Hinkin, testified regarding his understanding that both he and Account Executives were to earn commissions in the amount of 2.5% of all revenues generated by accounts sold by Account Executives, even after their transfer to Account Managers for ongoing maintenance. (*See* Declaration of Jason Hinkin in Opposition ("Hinkin

4

1  Opp. Decl.") at ¶ 8; Declaration of Jason Hinkin in Reply at ¶ 3.)  Hinkin testified that this
2  commissions structure was implemented in approximately March 2007 and that he had not
3  communicated to his sales teams, including Plaintiff, that the 2.5% commissions were
4  retractable by the company.  (Hinkin Opp. Decl. at ¶ 10.)  When Adknowledge began to discuss
5  switching the commissions structure to grant bonuses as incentive pay to Account Executives
6  who made a certain number of sales per month instead, Hinkin testified that there were
7  discussions about whether the old existing accounts still generating revenue and producing
8  commissions would be grandfathered in or whether the new plan would only apply to new sales.
9  (*Id.* at ¶ 13.)  This issue remained unresolved by the time of Hinkin's departure from the
10 company.  (*Id.*)

11 After briefing on the cross-motions for summary judgment, Plaintiff was able to take the
12 deposition of a fellow former Adknowledge Account Executive, Charles Austin.[1]  Austin
13 testified that he was recruited to a sales position based on the compensation structure of
14 collecting a percentage of all revenue on accounts the sales person brought in.  (Declaration of
15 Moira McQuaid, Ex. 1 (deposition of Charles Austin) at 9:2-17.)  Austin testified that he had
16 never heard of such a generous commissions structure and it was a large part of the reason he
17 joined the company.  (*Id.* at 10:16-11:21.)  Austin also testified that the Adknowledge
18 executives, in trying to recruit Austin to the sales team, indicated that Plaintiff also earned
19 commissions based on this structure and had been very successful at the company.  (*Id.* at
20 11:22-12:19.)  Austin further testified that Plaintiff confirmed his understanding that the
21 compensation plan did not have any expiration for eligibility.  (*Id.* at 12:23-13:6.)  Austin was
22 not certain as to the precise percentage of commissions was, although he was certain it was a set
23 percentage, but testified that "2.5 rings a bell."  (*Id.* at 24:15-22.)

---

[1] The Court GRANTS Plaintiff's motion to supplement the record based on the after-acquired evidence.  The Court does not find persuasive Adknowledge's contention that Austin's testimony is irrelevant.  Austin testified about what he understood his own unusual commissions plan to be at Adknowledge as well as Plaintiff's confirmation of his own, similar, payment structure.  Lastly, Austin testified about the executives' recruiting efforts primarily driven by their assurances of ongoing commissions paid on revenue generated by accounts transferred to the Account Managers.  This testimony is relevant.

5

The evidence is clear that Adknowledge changed the compensation structure in April 2008 in an effort to base the incentive plan on "bringing in new advertisers in categories where we did not have depth." (Declaration of Phil Horowitz ("Horowitz Decl."), Ex. 1 (deposition of Eric Sternbach) at 76:24-77:2.) The changed compensation structure, starting April 1, 2008, awarded Account Executives with bonuses for attaining a certain number of new sales per pay period. (Elliott Opp. Decl., Ex. 1.)

Although there is evidence regarding the payment structure indicating that there was in place a plan which entitled Plaintiff to 2.5% commissions on revenue generated on his accounts, the testimony is not definitive either as to the amount of the percentage, the time the structure was in place, the accounts for which this structure applied, whether and how much such commissions were actually paid, and whether the sales executives were informed that the structure had a termination or expiration date. Further, Adknowledge proffers evidence in response to interrogatories that "[n]o one made the decision to pay Plaintiff a commission of 2.5%. There was no contract, written agreement, or any other writing where Defendant agreed to pay Plaintiff a commission of 2.5%. Adknowledge never committed to pay Plaintiff a commission of 2.5%." (Horowitz Decl., Ex. 6 at 3:19-21.)

Because there is a genuine dispute of material fact as to whether there was an agreement to pay such a percentage commission, the amount of the percentage commission, the start date of the plan if there was such an agreement, and the terms of the commission structure (i.e., which accounts it applied to and for how long), the Court cannot grant summary judgment as to the commissions owed. However, as a matter of law, the Court determines that should the terms of the commissions structure have been, as Plaintiff alleges – that Account Executives were entitled to 2.5% of all sales revenue for all accounts they brought into the company – the Court finds those commissions are due and owing for all accounts Plaintiff brought into the company, from the date of the onset of the agreement to the date Plaintiff was terminated from employment.

"Plaintiff's right to a commission is dependent entirely upon the terms of the agreement between the parties and the nature of the services required to be rendered by him."

6

*Chamberlain v. Abeles*, 88 Cal. App. 2d 291, 295 (1948). The principle, as stated in the Restatement, applies in this matter:

> An agent whose compensation is conditional upon his accomplishment of a specific result is entitled to the agreed compensation if, and only if, he is the effective cause of accomplishing the result. .... An agent is an 'effective cause,' ... when his efforts have been sufficiently important in achieving a result for the accomplishments of which the principal has promised to pay him so that it is just that the principal should pay the promised compensation to him.'

*Id.* at 295-96, citing Rest. Agency, sec. 448, comment a.

In this case, there is no dispute that the Account Executive had completed all that is required when he brings in a new customer, finalizes the account funding paperwork, and the client succeeds in getting at least one "click" on Adknowledge's BidSystem. (*See* Elliott Opp. Decl. at ¶ 8; Horowitz Decl., Ex. 1 (deposition of Eric Sternbach) at 77:3-8; Ex. 2 (deposition of Dock Kee Kim) at 28:25-29:20; Narvid Decl., Ex. B (deposition of Eric Sternbach) at 21:17-22:10.) To the extent Plaintiff is able to demonstrate that, during the time of the alleged oral agreement of a 2.5% commissions structure on all revenue for completed work, Plaintiff would have to proffer evidence of those completed contracts for sale. However, Plaintiff did not proffer this evidence, or any account information for those customers on which Plaintiff was allegedly paid under the 2.5% commissions plan. Regardless, the Court finds that once Plaintiff can demonstrate that he performed all that was required in order to earn the commission, he is entitled to that agreed-upon commission for the life of the account, until his termination. *See Zinn v. Ex-Cell-O Corp.*, 24 Cal. 2d 290, 295-96 (1944) (holding that when an agent has fully performed the service that would entitle him to commissions, he is entitled to those agreed-upon commissions, until termination of the relationship).

The Court is not persuaded by Adknowledge's arguments to the contrary. Simply because the company could at any time and at its discretion change the commissions structure, it does not change the fact that Plaintiff may indeed have earned the 2.5% commissions on those accounts for which he completed the expected work prior to April 1, 2008. The question is not whether Adknowledge was entitled to change its commissions structure. That it could do with the appropriate procedural safeguards. *See Asmus v. Pacific Bell*, 23 Cal. 4th 1, 12-13, 15

7

(2000). However, the work completed on Plaintiff's accounts prior to expiration of the former commissions structure, falls under the parties' alleged prior oral agreement. *See id.* (holding that an employer may not generally interfere with an employee's vested benefits). Accordingly, although the Court DENIES both parties' motions for summary judgment on the contract causes of action, the Court finds that should Plaintiff be able to provide evidence of completed work, the specific accounts and the 2.5% commissions payments made while the alleged agreement was in place, Plaintiff would be entitled to such commissions on those accounts on which his work was completed prior to the change in commissions structure on April 1, 2008, and until the date of his termination from employment.

**3.     Promissory Fraud.**

As his fourth cause of action, Plaintiff alleges that he was induced to remain employed by promises of a lucrative commissions plan which, he alleges, executives at Adknowledge had no intention of honoring. The elements of promissory fraud include that defendant lack the intent to perform an important promise at the time when the promise is made. *See Engalla v. Permanente Medical Group, Inc.*, 15 Cal. 4th 951, 973-74 (1997). "Promissory fraud is a subspecies of the actions for fraud and deceit. A promise to do something necessarily implies the intention to perform; hence, where a promise is made without such intention, there is an implied misrepresentation of the fact that may be actionable for fraud." *Lazar v. Superior Ct. of Cal.*, 12 Cal. 4th 631, 638 (Cal. 1996). However, something more than nonperformance is required to prove the defendant's intent not to perform his promise. *People v. Ashley*, 42 Cal. 2d 246, 263 (1954).

Plaintiff alleges that Adknowledge's false claim that they never agreed to pay him 2.5% commissions constitutes circumstantial evidence that defendant never intended to honor its promise in the first place. Adknowledge cross-moves and argues that there is no evidence in the record that it did not intend to honor its promise, as it alleges that no such promise was ever made. Accordingly, there is a genuine dispute of material fact and the Court DENIES both parties' cross-motions for summary judgment on the fourth cause of action for promissory fraud.

8

**4.   Discharge and Retaliation for Opposing Failure to Pay Wages Earned.**

Plaintiff alleges that he was terminated as a result of his making complaints about the implementation of the new commission plan. In order to prevail on a retaliation claim, a plaintiff must establish a prima facie case by demonstrating: (1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action. *Rav v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000); *Flait v. North American Watch Corp.*, 3 Cal. App. 4th 467, 476 (1992). As with a discrimination claim, the burden then shifts to the employer to show a legitimate nondiscriminatory reason for the adverse employment action. If the employer meets this burden, the plaintiff must then demonstrate that the employer's reason was merely pretext. *Miller v. Fairchild Indus., Inc.*, 885 F.2d 498, 504 n.4 (9th Cir. 1989).

Plaintiff alleged in his complaint that he engaged in protected activity when he complained about the change in commissions structure and failure to pay back commissions, and the adverse employment action was his termination. The only dispute is whether a causal connection exists between the protected activity and the adverse employment action. Plaintiff proffers his testimony indicating that he started to encounter differential treatment and resistance to his efforts to contribute to the sales team immediately after he expressed his displeasure with the new commissions plan and with the company's failure to pay him earned commissions. (Elliott Opp. Decl. at ¶¶ 25-37.) Plaintiff alleges that the sales expectations numbers set by Adknowledge at that time were "close to impossible" and the limitations on the types and categories of accounts imposed upon him were unreasonably restricted. (*Id.* at ¶¶ 33-35, Exs. 5, 6.) Plaintiff alleges that Adknowledge sought to modify both the commissions plan and to set advantageous sales expectations for its Account Executives, but simultaneously made it nearly impossible for Plaintiff to meet those expectations. (*Id.*) Plaintiff was placed on a 30-day performance improvement plan and ultimately terminated for failure to meet sales expectations. (*Id.*) Plaintiff alleges that he already had been subject to retaliation and was unable to meet his employer's unrealistic work conditions and sales expectations.

Adknowledge contends that it terminated Plaintiff simply for failure to meet sales

9

1  expectations and the requirements set forth in the performance improvement plan.  Accordingly,
2  there is a genuine dispute of material fact and the Court DENIES both parties' cross-motions for
3  summary judgment on the fifth cause of action for discharge and retaliation for opposing failure
4  to pay wages earned.

**5.     Discharge Because of Age in Violation of FEHA.**

Again, "California has adopted the three stage burden-shifting test established by the United States Supreme Court for trying claims of discrimination." *Guz*, 24 Cal. 4th at 355 (citing, *inter alia*, *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981), *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).  Under this framework, Plaintiff must first establish a prima facie case of discrimination.  *See Guz*, 24 Cal. 4th at 351-54; *Yanowitz*, 36 Cal. 4th 1028.   Whether Plaintiff can meet his burden to establish a prima facie case is a matter of law to be determined by the court.  *Caldwell v. Paramount Unified School District*, 41 Cal. App. 4th 189, 201 (1995).  If Plaintiff establishes a prima facie case of age discrimination, the burden then shifts to Adknowledge to articulate a legitimate, nondiscriminatory reason for its employment decision.  Then, in order to prevail, Plaintiff must demonstrate that Adknowledge's alleged reason for the adverse employment decision was a pretext for another, discriminatory or retaliatory motive.  *See Guz*, 24 Cal. 4th at 355-56; *see also Villiarimo v. Aloha Island Air, Inc*., 281 F.3d 1054, 1061 (9th Cir. 2002).

"It is an unlawful employment practice for an employer to refuse to hire or employ, or to discharge, dismiss, reduce, suspend, or demote, any individual over the age of 40 on the ground of age, except in cases where the law compels or provides for such action." Cal. Gov. Code § 12941.  Plaintiff may establish a prima facie case of age discrimination by demonstrating that (1) he was a member of a protected class, (2) he was performing competently in the position he held, (3) he suffered an adverse employment action, and (4) he was replaced by a substantially younger employee.  *See Guz*, 24 Cal. 4th at 355.  Although courts have determined that the fourth element may be applied flexibly in cases where an employer engaged in a general reduction in force, this is not such a case.  *See Diaz v. Eagle Produce Ltd. Partnership*, 521 F.3d 1201, 1207 n.2 (9th Cir. 2008).

10

Due to his age of 45, Plaintiff can establish that he was a member of the protected class and there is no dispute that he suffered an adverse employment action. However, Plaintiff has not demonstrated based on undisputed facts that he was performing competently in his position nor that he was replaced by a substantially younger employee. Although Plaintiff alleges that other sales executives hired were younger than he, Plaintiff does not know their actual ages nor does he allege that they replaced his position once terminated. (Elliott Opp. Decl. at ¶ 39; Horowitz Decl., Ex. 2 (deposition of Dock Kee Kim) at 20:12-23:23.) Accordingly, the Court DENIES Plaintiff's motion for summary judgment on his sixth claim for discharge because of age discrimination in violation of FEHA.

However, in opposition to Adknowledge's cross-motion for summary judgment, there is no evidence in the record proffered to support a cause of action for age discrimination. Plaintiff merely testifies that it was his subjective belief that his age was a factor in his termination, but proffers no evidence in support of that speculation. (*See* Narvid Decl., Ex. A (deposition of Mark Elliott) at 255:4-256:12, 260:11-16.) Plaintiff testified that no one made remarks about his age during his tenure at Adknowledge. (*Id.* at 259:13-15.) In fact, Plaintiff testified that it was his belief that he was terminated due to his employer's "greed more than anything else" and that he did not know "if it had anything to do with [his] age." (*Id.* at 272:4-9.) The only substantive evidence proffered by Plaintiff regarding possible age discrimination is an alleged negative remark about a fellow terminated employee's age. (Elliott Opp. Decl. at ¶ 40; Declaration of Guy Gottlieb at ¶ 12.) Disregarding that the comment allegedly reported is hearsay and did not pertain to and was not directed at Plaintiff, a stray remark, without other substantial evidence, is insufficient to withstand summary judgment. *See Mangold v. California Public Utilities Commission*, 67 F.3d 1470, 1477 (9th Cir. 1995). Having failed to elicit any evidence of Plaintiff's generalized speculation about his age possibly being a factor in his termination, the Court GRANTS Adknowledge's motion for summary judgment on the sixth cause of action for discharge because of age in violation of FEHA.

///

///

11

United States District Court
For the Northern District of California

## CONCLUSION

For the foregoing reasons, the Court DENIES the parties' cross-motions for summary judgment with the exception that it GRANTS Adknowledge's motion for summary judgment on Plaintiff's sixth cause of action for discharge because of age in violation of FEHA. Lastly, the Court GRANTS Plaintiff's motion to supplement the evidence.

**IT IS SO ORDERED.**

Dated: March 14, 2012

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE